NO. COA13-488

NORTH CAROLINA COURT OF APPEALS

Filed:  18 February 2014

CHARTER DAY SCHOOL, INC.,
    Plaintiff-Appellee,

v.                                          New Hanover County
                                            No. 11 CVS 2777
THE NEW HANOVER COUNTY BOARD OF
EDUCATION and TIM MARKLEY,
SUPERINTENDENT IN HIS OFFICIAL
CAPACITY, d/b/a "New Hanover
County Schools,"
    Defendant-Appellants.


        Appeal by defendant from order and judgment entered 4 December

2012 by Judge W. Douglas Parsons in New Hanover County Superior

Court.  Heard in the Court of Appeals 23 October 2013.


        *Shipman & Wright, LLP, by Gary K. Shipman and Gregory M.*
        *Katzman, for plaintiff-appellee.*

        *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Jill*
        *R. Wilson, Robert J. King, III, and Jennifer K. Van Zant, for*
        *defendant-appellant.*

        *Allison B. Schafer and Christine T. Scheef for the North*
        *Carolina School Boards Association, amicus curiae.*


        McCULLOUGH, Judge.


        Defendant, New Hanover County Board of Education d/b/a New

Hanover County Schools ("NHCS"), appeals from the order and

judgment entered by the trial court on 4 December 2012.  For the

following reasons, we reverse in part and affirm in part.

## I. Background

Plaintiff, Charter Day School, Inc. ("Charter Day"), is a charter school in Brunswick County that provides free public education to students from various southeastern North Carolina counties, including New Hanover County. As a public school, *see* N.C. Gen. Stat § 115C-238.29E(a) (2013) ("A charter school that is approved by the State shall be a public school within the local school administrative unit in which it is located."), Charter Day is entitled to state and local funding. Specifically, for the time period pertinent to this case, N.C. Gen. Stat. § 115C-238.29H (the "Charter School Funding Statute") provided, "[i]f a student attends a charter school, the local school administrative unit in which the child resides shall transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." N.C. Gen. Stat. § 115C-238.29H(b) (2007).[1]

On 30 June 2011, Charter Day commenced this action against NHCS and Al Lerch, in his official capacity as Superintendent of

---

[1]The years at issue in this appeal are the 2007-2008 through 2009-2010 fiscal years. Thus, we cite to the 2007 version of the North Carolina General Statutes, which were unaltered during the relevant time period.

NHCS, by filing a complaint in New Hanover County Superior Court.[2] In the complaint, Charter Day asserted two claims for relief: (1) a declaratory judgment that NHCS failed to transfer all amounts owed to Charter Day under the Charter School Funding Statute from the time Charter Day opened, the 2001-2002 fiscal year ending 30 June 2002, through the 2010-2011 fiscal year ending 30 June 2011; and (2) a judgment against NHCS to recover the amount Charter Day alleged to be underfunded. By amended complaint filed shortly thereafter, Charter Day replaced defendant Al Lerch, who retired prior to the commencement of the action, with Tim Markley, the superintendent of NHCS at the time. NHCS and Tim Markley (together "defendants") answered the complaint on 1 September 2011.

On 12 April 2012, Charter Day filed a motion for partial summary judgment on defendants' seventh and eighth defenses, in which defendants alleged "Charter Day School is not a legitimate non-profit entity, as required by North Carolina law for the operation of a charter school." Thereafter, on 25 April 2012, defendants filed their own motion for partial summary judgment on Charter Day's claims for the 2001-2002 through 2006-2007 fiscal years on the ground that the claims were barred by the applicable

---

[2]Columbus Charter School initially joined Charter Day as a plaintiff in the lawsuit; however, on 11 April 2012, Columbus Charter voluntarily dismissed its claims without prejudice.

three-year statute of limitations. Both partial summary judgment motions came on for hearing in New Hanover County Superior Court on 7 May 2012, the Honorable W. Allen Cobb, Jr., Judge presiding. Following the hearing, the trial court granted the motions in separate 14 May 2012 orders.

On 22 June 2012, Charter Day filed a motion for summary judgment on the remaining issues. Charter Day's motion came on for hearing in New Hanover County Superior Court before the Honorable W. Douglas Parsons on 5 July 2012.

On 17 July 2012, the trial court filed an order for partial summary judgment in favor of Charter Day. The trial court concluded defendants' "methods for calculating the per pupil local current expense appropriation for the fiscal years in question (2008, 2009 and 2010) [was] improper, as a matter of law[.]" Specifically, defendants "were required to include the entire Fund Balance for the fiscal years in question, and not just the 'modified' or 'appropriated' Fund Balance[,]" and defendants "improperly included 'pre-Kindergarten' ('pre-K') students in their total student enrollment[.]" The trial court did not, however, grant Charter Day's motion for summary judgment "as to the amounts due from the [d]efendants[.]" Instead, the trial court ordered defendants to "re-calculate its' Funding Formula for the

fiscal years in question[] . . . [and] provide its re-calculated per pupil allocation for the years in question for the pupils attending [Charter Day] to [Charter Day]" within ninety (90) days.

Defendants filed a submission regarding per pupil allocations for the fiscal years in question on 12 October 2012 and a revised submission on 20 November 2012.

Following the submissions of defendants' recalculations, the trial court filed a final order and judgment on 4 December 2012. In the order and judgment, the trial court reiterated its prior determination that "[d]efendants' method for calculating the per pupil local current expense appropriation for the fiscal years in question was improper, as a matter of law, and failed to comply with the requirements of [N.C. Gen. Stat.] § 115C-238.29H(b), in that the [d]efendants did not include the entire Fund Balance in the numerator and included pre-K students in the denominator." Then, based on defendants' submissions regarding per pupil allocations, the trial court entered judgment against NHCS in favor of Charter Day in the amount of $138,878.91. Additionally, the trial court dismissed all claims against Tim Markley and ordered NHCS, "[s]ubject to any subsequent changes in the law," to "transfer to [Charter Day] an amount equal to the per pupil local current expense appropriation for each student enrolled in a

charter school operated by [Charter Day]" in accordance with the order "for all subsequent fiscal years beyond those in question in [the] action[.]"

NHCS filed notice of appeal on 21 December 2012 and execution of the judgment was stayed pursuant to the terms of the order and judgment.

## II. Discussion

On appeal of the trial court's grant of summary judgment in favor of Charter Day, NHCS raises two issues:  whether the trial court erred by (1) including the entire fund balance in the calculations of the per pupil local current expense appropriation, and (2) excluding pre-K students from the calculations of the per pupil local current expense appropriation.

### Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'"  *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).  In the present case, the facts are not in dispute and we

need only determine whether the trial court erred as a matter of law in entering summary judgment in Charter Day's favor.

## Fund Balance

Fund balance results where money appropriated to the local school administrative unit is not spent in the fiscal year in which it was intended, but is saved for future use. Thus, the fund balance is essentially a savings account. In this case, NHCS acknowledges that the portion of the fund balance appropriated for use in any given year is included in the local current expense appropriation and shared pursuant to the Charter School Funding Statute. Yet, NHCS argues the trial erred in ordering the entire fund balance to be included in the local current expense appropriation. Upon review, we hold the trial court erred.

As noted above, charter school funding is governed by statute. During the years at issue in this case, subsection (b) of the Charter School Funding Statute provided, in pertinent part, "[i]f a student attends a charter school, the local school administrative unit in which the child resides shall transfer to the charter school an amount equal to the per pupil local current expense appropriation to the local school administrative unit for the fiscal year." N.C. Gen. Stat. § 115C-238.29H(b) (2007). Similar to previous charter school funding cases decided by this Court,

the predominant issue for our determination is what comprises the local current expense appropriation that must be shared *pro rata*.

In *Francine Delany New School for Children, Inc. v. Asheville City Bd. of Educ.*, 150 N.C. App. 338, 563 S.E.2d 92 (2002), this Court addressed whether revenues from fines, forfeitures, and supplemental school taxes accruing to the "local current expense fund" pursuant to N.C. Gen. Stat. § 115C-426(e) of the Fiscal Control Act were required to be shared on a per pupil basis with charter schools pursuant to N.C. Gen. Stat. § 115C-238.29H(b) of the Charter School Funding Statute as part of the "local current expense appropriation." In deciding the charter school was entitled to a share of the supplemental revenues, this Court affirmed the trial court's conclusion "that the phrase 'local current expense appropriation' in the Charter School Funding Statute, [N.C. Gen. Stat.] § 115C-238.29H(b), is synonymous with the phrase 'local current expense fund' in the [Fiscal Control Act], [N.C. Gen. Stat.] § 115C-426(e)." *Id*. at 347, 563 S.E.2d at 98. Accordingly, charter schools are entitled to a *pro rata* share of the local current expense fund under the Charter School Funding Statute.[3]

_____

[3]Subsequent to the time period at issue in this case, the General Assembly amended N.C. Gen. Stat. § 115C-238.29H(b) to replace "per pupil local current expense appropriation to the local school

Subsequent to *Francine Delany*, this Court has decided several additional charter school funding cases determining whether certain funds held in the local current expense fund must be shared *pro rata* with charter schools. *See Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 188 N.C. App. 454, 655 S.E.2d 850 (*Sugar Creek I*), *disc. review denied*, 362 N.C. 481, 667 S.E.2d 460 (2008), (holding the charter school was entitled to a share of funds earmarked for Bright Beginnings, a special program for at-risk pre-K children, and a High School Challenge grant because the funds were included in the local current expense fund); *Sugar Creek Charter School, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 673 S.E.2d 667 (*Sugar Creek II*), *appeal dismissed and disc. review denied*, 363 N.C. 663, 687 S.E.2d 296 (2009) (holding the charter school was entitled to a share of funds carried over from previous years into the current year's local current expense fund and other earmarked funds included in the local current expense fund). As this Court noted in *Thomas Jefferson Classical Academy v. Rutherford County Bd. of Educ.*, _ N.C. App _, _, 715 S.E.2d 625, 630 (2011), *appeal dismissed and*

---

administrative unit" with "per pupil share of the local current expense fund of the local school administrative unit[.]" 2013 N.C. Sess. Laws c.355 s. 1(h).

*disc. review denied*, _ N.C. _, 724 S.E.2d 531 (2012), "[t]he common thread running through each of these holdings is that if funds are placed in the 'local current expense fund[,]' . . . they must be considered as being part of the 'local current expense fund' used to determine the *pro rata* share due to the charter schools."

The present case, however, is unlike the previous cases. Here, the issue is not whether certain funds in the local current expense fund must be shared, but rather what portion of the fund balance is included in the local current expense fund and subject to allocation pursuant to the Charter School Funding Statute.

The Fiscal Control Act provides guidance.

> The local current expense fund shall include appropriations sufficient, when added to appropriations from the State Public School Fund, for the current operating expense of the public school system in conformity with the educational goals and policies of the State and the local board of education, within the financial resources and consistent with the fiscal policies of the board of county commissioners. These appropriations shall be funded by revenues accruing to the local school administrative unit by virtue of Article IX, Sec. 7 of the Constitution, moneys made available to the local school administrative unit by the board of county commissioners, supplemental taxes levied by or on behalf of the local school administrative unit pursuant to a local act or G.S. 115C-501 to 115C-511, State money disbursed directly to the local school administrative unit, and *other moneys made available or accruing to the local school administrative unit for the*

*current operating expenses of the public school system.*

N.C. Gen. Stat. § 115C-426(e) (2007) (emphasis added). Thus, fund balance is included in the local current expense fund when it is "made available or accruing to the local school administrative unit for the current operating expenses[.]"

Charter Day contends the entire fund balance is available to the local school administrative unit for current operating expenses because it can be appropriated for use. NHCS, on the other hand, contends only that portion of the fund balance that is appropriated for use is available to the local school administrative unit for current operating expenses. We agree with NHCS.

The Fiscal Control Act mandates "[e]ach local school administrative unit shall operate under an annual balanced budget resolution[.]" N.C. Gen. Stat. § 115C-425(a) (2007). "A budget resolution is balanced when the sum of estimated net revenues and appropriated fund balances is equal to appropriations." *Id*. Moreover, "no local school administrative unit may expend any moneys, regardless of their source . . . , except in accordance with a[n adopted] budget resolution." N.C. Gen. Stat. § 115C-425(b). A budget resolution must be adopted by the local board of education. *See* N.C. Gen. Stat. § 115C-432 (2007).

Considering these provisions together, we hold the fund balance is not available to the local school administrative unit for current operating expenses until it is appropriated for use in a budget resolution adopted by the local board of education. Therefore, only that portion of the fund balance that is actually appropriated in a particular year is to be included in the local current expense fund and subject to *pro rata* allocation pursuant to the Charter School Funding Statute. That portion of the fund balance that is not appropriated remains a balance sheet entry, subject to appropriation in future years.

In addition to deciding the issue on appeal, we take this opportunity to reconcile the holding in *Sugar Creek II*, which Charter Day argues already resolved the issue at hand. Because we determine the issue presented to this Court in *Sugar Creek II* is different from the issue in the present case, we are not bound by *Sugar Creek II*. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").

In *Sugar Creek II*, this Court addressed, among other issues, whether the trial court properly included the fund balance in the

local current expense fund for purposes of calculating its award to the charter school. 195 N.C. App. at 360, 673 S.E.2d at 675. Following a brief discussion, this Court held "the trial court did not err in including the fund balance in its calculation of its award." *Id*. The Court reasoned, "[a]s the fund balance is carried over from the previous fiscal year to the current fiscal year, it constitutes moneys in [d]efendants' local current expense fund." *Id*.

Charter Day argues that, because *Sugar Creek II* does not specify appropriated fund balance, the opinion requires the entire fund balance to be included in the local current expense fund. We disagree. Although we acknowledge the court did not specify appropriated fund balance, it is clear that this court upheld the trial court's decision. Upon careful review of the record in *Sugar Creek II*, it is evident the trial court determined only that the "fund balance appropriated" was "other local revenue" to be included in the local current expense fund and shared pursuant to the Charter School Funding Statute. Thus, in holding "the trial court did not err in including the fund balance in its calculation of its award[,]" this Court considered only that portion of the fund balance that was appropriated for use in the current fiscal year.

We find this Court's analysis in *Sugar Creek II* further supports both our interpretation of the *Sugar Creek II* decision and our holding in this case. In deciding the fund balance issue in *Sugar Creek II*, this Court was guided by its observation "that the General Assembly intended that charter school children have access to the same level of funding as children attending the regular public schools of this State." 195 N.C. App at 357, 673 S.E.2d at 673. This Court then focused on each year individually and determined whether the fund balance at issue must be included in the local current expense fund, discounting defendants' "double dip" argument and stating, "[d]efendants' argument is double-edged. If [d]efendants do not share the fund balance with [p]laintiff's, then [d]efendants' students will receive more per pupil funds in the current fiscal year than [p]laintiff's students." *Id*. at 360, 673 S.E.2d at 675.

Looking at each year individually, it is evident that when the appropriated portion of the fund balance is included in the local current expense fund, "charter school children have access to the same level of funding as children attending the regular public schools of this State." On the other hand, when the entire fund balance is included in the local current expense fund, charter school students receive greater funding than students attending

regular public schools because charter school students receive a share of the unappropriated fund balance that is not available to students attending regular public schools. Thus, the only interpretation of *Sugar Creek II* that gives effect to the recognized intent of the General Assembly is that this Court considered only the appropriated fund balance when it stated, "[a]s the fund balance is carried over from the previous fiscal year to the current fiscal year, it constitutes moneys in [d]efendants' local current expense fund."[4]

We hold the trial court erred in ordering NHCS to include the entire fund balance in the calculations of the per pupil local current expense appropriation.

### Pre-Kindergarten Students

---

[4]We further note that following the *Sugar Creek II* decision, effective beginning with the 2010-2011 school year, 2010 N.C. Sess. Laws c.31 s. 7.17(c), the General Assembly amended N.C. Gen. Stat. § 115C-426(c) to include the following language: "In addition, the appropriation or use of fund balance or interest income by a local school administrative unit shall not be construed as a local current expense appropriation." 2010 N.C. Sess. Laws c.31 s. 7.17(a). Although we recognize the amendment does not apply retroactively, the amendment supports our interpretation of *Sugar Creek II*, as the legislature acted to prevent appropriations from the fund balance from being apportioned pursuant to the Charter School Funding Statute. Had *Sugar Creek II* considered the entire fund balance, following the amendment to N.C. Gen. Stat. § 115C-426(c), the unappropriated portion of the fund balance would continue to be included in the local current expense appropriation while the appropriated fund balance would not. This would be an absurd and illogical result.

NHCS acknowledges that, during the time period at issue in this case, money it received to fund pre-K programs was included in the local current expense fund and, pursuant to this Court's holding in *Sugar Creek I*, 188 N.C. App. at 461, 655 S.E.2d at 855, is subject to allocation under the Charter School Funding Statute. Yet, in the second issue on appeal, NHCS argues the trial court erred in ordering pre-K students to be excluded from the number of pupils in the calculations of the per pupil local current expense appropriation. Upon review, we hold the trial court did not err.

Simple math demonstrates the inclusion of pre-K students in the calculations of the per pupil local current expense appropriation increases the denominator in the funding formula and results in a smaller per pupil appropriation. In turn, where Charter Day does not operate a pre-K program, the smaller per pupil appropriation results in a lesser share of the local current expense appropriation to Charter Day and a greater share of the local current expense appropriation to NHCS. It is for this reason that NHCS argues pre-K students should be included in the calculations of the per pupil local current expense appropriation. NHCS, however, cites no authority in support of its argument. Instead, NHCS relies merely on the facts that the pre-K funds are

included in the calculations pursuant to *Sugar Creek I* and the appropriation is "per pupil."  In NHCS's own words,

> [F]or the relevant year, the funds for the pre-Kindergarten programs are included in the local current expense fund.  That fund must be shared pro rata with Charter Day School[,] which means it is divided by the sum of the total number of students enrolled in NHCS and the total number of students enrolled at Charter Day School.  If the funds are in, the students should be in.

We are not persuaded by NHCS's argument.

Admission into North Carolina's public school system is governed by statute.  The admission requirements provide that only those children who have "reached the age of 5 on or before August 31 of that school year" or those children who had "been attending school during that school year in another state in accordance with the laws or rules of that state before the child moved to and became a resident of North Carolina[]" may enroll in public schools.  N.C. Gen. Stat. § 115C-364(a) (2007).  Furthermore, when a child is enrolled, "[t]he initial point of entry into the public school system shall be at the kindergarten level."  N.C. Gen. Stat. § 115C-364(c).  Admission into North Carolina's charter schools is subject to these same restrictions.  *See* N.C. Gen. Stat. § 115C-238.29F(g)(1) (2007) ("Any child who is qualified under the laws of this State for admission to a public school is qualified for admission to a charter school.").  Based on these statutes, it is

evident pre-K students are not entitled to enrollment in North Carolina's public school system or charter schools.

Although charter school funding is calculated on a "per pupil" basis, because pre-K students are not entitled to enrollment in North Carolina's public school system or charter schools, we hold pre-K students should not be included in the pupil count for purposes of calculating the per pupil local current expense appropriation.

To this point, NHCS does not dispute that pre-K students are not entitled to enrollment under the statutes, but instead argues that because it is required to serve a population of pre-K students under this Court's holding in *Hoke County Bd. of Educ. v. State of North Carolina*, _ N.C. App. _, 731 S.E.2d 691 (2012), *appeal dismissed and opinion vacated*, _ N.C. _, 749 S.E.2d 451 (2013), it should be allowed to include them in its calculations of the per pupil local current expense appropriation. Again, we disagree.

In *Hoke County*, this Court upheld the trial court's order "mandating the State to not deny any eligible 'at-risk' four year old admission to the North Carolina Pre-Kindergarten Program." _ N.C. App. at _, 731 S.E.2d at 695. That decision, however, is not controlling in the present case for two reasons. First, the trial court's mandate in *Hoke County* was issued by order dated 18 July

2011 and upheld by this Court in 2012, subsequent to the years at issue in this case. Second, and more importantly, our Supreme Court recently vacated this Court's *Hoke County* decision and remanded the case to this Court with instructions to vacate the trial court's order. *See Hoke County Bd. of Educ. v. State of North Carolina*, _ N.C. _, 749 S.E.2d 451 (2013). As a result, there is no mandate that the State admit at-risk students into the North Carolina Pre-Kindergarten Program.

Without a mandate requiring pre-K admissions, we are left with the holdings of *Leandro v. State of North Carolina*, 346 N.C. 336, 488 S.E.2d 249 (1997) (*Leandro I*), and *Hoke County Bd. of Educ. v. State of North Carolina*, 358 N.C. 605, 599 S.E.2d 365 (2004) (*Leandro II*). In *Leandro I*, our Supreme Court held "Article I, Section 15 and Article IX, Section 2 of the North Carolina constitution combine to guarantee every child of this state an opportunity to receive a sound basic education in our public schools." 346 N.C. at 347, 488 S.E.2d at 255. Thereafter, in *Leandro II*, our Supreme Court recognized that the issue with pre-K programs was "whether the State must help prepare those students who enter the schools to avail themselves of an opportunity to obtain a sound basic education." 358 N.C. at 639, 599 S.E.2d at 391. Yet, while recognizing the challenges of at-risk enrollees

in *Leandro II*, the Court expressly rejected the portion of the trial court's order mandating a pre-K program. *Id*. at 645, 599 S.E.2d at 395. Thus, while NHCS was required to prepare students to obtain a sound basic education, they were not required to enroll any students in a pre-K program.

We hold the trial court did not err in ordering NHCS to exclude pre-K students from the calculations of the per pupil local current expense appropriation.

## III. Conclusion

For the reasons discussed above, we reverse the trial court's decision to the extent it includes the entire fund balance in the per pupil local current expense appropriation calculations and we affirm the trial court's decision to the extent it excludes pre-K students from the per pupil local current expense appropriation calculations.

Reversed in part, affirmed in part.

Judges ELMORE and DAVIS concur.